[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10053
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cr-00347-RBD-DAB-1


UNITED STATES OF AMERICA

Plaintiff - Appellee,

versus

MICHAEL METAYER

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 6, 2013)

Before PRYOR, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Michael Metayer appeals his conviction for conspiracy to possess over 500 grams of cocaine with the intent to distribute.  After reviewing the record and the parties' briefs, we affirm.

## I

Because we write for the parties, we assume familiarity with the underlying facts of the case and recite only what is necessary to resolve this appeal.

The government alleged that Mr. Metayer supplied cocaine to one Harris Noel for resale in the Orlando area.  During the course of an investigation into Mr. Noel's alleged narcotic activities, the government obtained pen register and wiretap orders for Mr. Noel's cell phone and translated from Creole to English a series of calls between Messrs. Noel and Metayer.

Following Mr. Noel's arrest, authorities questioned Mr. Metayer outside his sister's house, the purported site of a number of cocaine transactions.  He denied knowing Mr. Noel and claimed ignorance as to the phone number of one of two cell phones he carried; officers later identified that phone number as one from which conversations were recorded during the course of Mr. Noel's wiretap. Officers also found $56,000 in a shoe box on the seat of a car parked outside the house.

Mr. Metayer was charged with and ultimately convicted of conspiracy to possess over 500 grams of cocaine with the intent to distribute in violation of 21

U.S.C. § 846.  On appeal, Mr. Metayer argues that the district court erred at trial by (1) admitting irrelevant and highly prejudicial evidence of  the $56,000 found in a car in front of his sister's house, where a cocaine transaction purportedly occurred; (2) admitting into evidence testimony regarding prior drug-related crimes; and (3) allowing an agent to identify Mr. Metayer's voice on recorded telephone calls.

## II

We review the district court's evidentiary rulings for abuse of discretion, which occurs only where the district court bases its evidentiary decision on a "clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005).  "We review preserved evidentiary objections for harmless error" but review evidentiary objections raised for the first time on appeal for plain error.  Id.

## III

### A

Mr. Metayer first contends that the district court erroneously allowed the government to introduce irrelevant and prejudicial testimony and evidence concerning the $56,000 found in a car outside his sister's home.  We need not consider relevance or prejudice, however, because Mr. Metayer himself was the first to elicit testimony about the $56,000 at trial.  "It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding

3

invited by that party." *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005) (internal punctuation and citations omitted).  Invited error arises where "a party induces or invites the district court into making an error." *Id*. (citing *United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998)).

Before the government broached the subject of the $56,000 during the direct examination of one of its agents and moved to introduce photographs of the money into evidence, Mr. Metayer's counsel interjected the topic into his cross examination of Mr. Noel, who testified as part of a plea agreement with the government.  Mr. Noel testified on direct that he had initially hoped to pay Mr. Metayer $28,000 per kilogram of cocaine but ultimately paid him $29,000 per kilogram.  In an apparent effort to establish that someone else had supplied Mr. Noel with cocaine, Mr. Metayer's counsel asked Mr. Noel to acknowledge that two kilograms at $28,000 each would total $56,000.  After Mr. Noel acknowledged as much, Mr. Metayer's counsel asked if he knew that $56,000 had been found in a car outside the house of Mr. Metayer's sister.  Because Mr. Metayer was the first to elicit testimony about the $56,000 and the location in which it was found, he cannot now fault the district court for admitting testimony and evidence on the same subject matter. *See United States v. Jernigan*, 341 F.3d 1273, 1289 (11th Cir. 2003) ("In the context of a district court's decision to admit certain evidence, the accepted rule is that where the injection of allegedly inadmissible evidence is

4

attributable to the action of the defense, its introduction does not constitute reversible error.") (internal punctuation and citations omitted).

## B

Mr. Metayer next asserts that the district court erred in admitting testimony from Mr. Noel regarding alleged prior drug transactions with Mr. Metayer. Mr. Metayer contends that such testimony constituted an improper attempt to use prior bad acts to prove that he committed the charged offense, that the government failed to elicit corroborating evidence of these prior transactions, and that he did not receive reasonable notice that the government planned to address these transactions in violation of Federal Rule of Evidence 404(b)(2).

Rule 404(b) prohibits the introduction of extrinsic evidence of other crimes, wrongs, or acts to prove a defendant's character in order to show action in conformity therewith. Even so, "evidence of criminal activity other than the charged offense is not 'extrinsic' under Rule 404(b), and thus falls outside the scope of the Rule, when it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (internal citations and quotation marks omitted). Moreover,

"while not all bad acts occurring within the time frame of a conspiracy are automatically admissible, the fact that they occurred in conjunction with a co-conspirator during the time of the conspiracy weighs heavily toward finding the acts are intertwined." *United States v. Lehder-Rivas*, 955 F.2d 1510, 1516 (11th Cir. 1992) (internal citations and quotation marks omitted)

Mr. Noel testified regarding the quantities of cocaine exchanged between himself and Mr. Metayer during each transaction and also indicated that meetings with Mr. Metayer were arranged by phone, occurred at the house of Mr. Metayer's sister, and culminated in a cash payment.  Mr. Noel's testimony, which detailed the logistics of the underlying conspiracy with which Mr. Metayer was charged, provided the necessary context for the government to "complete the story of the crime" and hence did not constitute "extrinsic" evidence.  *See Edouard*, 485 F.3d at 1344.  Because the testimony at issue was intrinsic, Rule 404(b)'s notice requirement did not apply.  *See United States v. Leavitt*, 878 F.2d 1329, 1339 (11th Cir. 1989) ("Since [the defendants' prior] acts are not [Rule] 404(b) evidence, the government was not required to give the defendants' notice of their [sic] intention to use them.").

6

## C

Finally, Mr. Metayer argues that the district court erred in permitting Agent Denis Smith to testify that the same two voices spoke on all of the Creole-language wiretapped phone calls introduced at trial and that Mr. Metayer's voice was one of the two voices speaking on those calls. In particular, Mr. Metayer argues that no showing was made that Agent Smith knew Creole, that Agent Smith knew Mr. Metayer's identity when the conversations were recorded, that Agent Smith had ever heard Mr. Metayer speak Creole, or that Agent Smith qualified as an expert in voice recognition.

Mr. Metayer is precluded from challenging Agent Smith's testimony that the same two voices spoke on the introduced phone calls because his own counsel first invited that testimony. Before calling Agent Smith, the government examined Gregory Bazin, who had transcribed and translated the calls from Creole to English. In response to a query from Mr. Metayer's counsel on cross examination, Mr. Bazin opined that the voices on all the recordings were the same. Agent Smith then reiterated on direct examination that the same two voices spoke on each of the recorded conversations at issue. Because Agent Smith's testimony merely served as cumulative affirmation of the testimony of Mr. Bazin that Mr. Metayer himself elicited, Mr. Metayer's challenge fails under the invited error doctrine. *See Jernigan*, 341 F.3d at 1289.

7

Mr. Metayer's arguments with respect to Agent Smith's identification of his voice are similarly unavailing. Federal Rule of Evidence 901 provides that a witness may identify a voice "based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Fed. R. Evid. 901(b)(5). "Once a witness establishes familiarity with an identified voice, it is up to the jury to determine the weight to place on the witness's voice identification." *Brown v. City of Hialeah,* 30 F.3d 1433, 1437 (11th Cir. 1994).

Agent Smith testified that he listened to the recorded conversations, that he had spoken with Mr. Metayer, and that he would be able to identify Mr. Metayer's voice if he heard it. The fact that Agent Smith could not understand Creole went to the weight that the jury chose to accord his testimony, not the threshold issue of its admissibility. *See Brown*, 30 F.3d at 1437. Nor does either Agent Smith's failure to qualify as a voice-recognition expert or his unfamiliarity with Mr. Metayer's identity during the investigation change our analysis. See Fed. R. Evid. 901 Adv. Comm. Notes ("Since aural voice identification is not a subject of expert testimony, the requisite familiarity may be acquired either before or after the particular speaking which is the subject of the identification[.]"); *United States v. Puentes*, 50 F.3d 1567, 1577 (11th Cir. 1995) (government satisfied requirements of Rule 901(b)(5) where inspector became familiar with defendant's voice during

8

wiretap surveillance period). The district court therefore properly admitted Agent Smith's testimony that he recognized Mr. Metayer's voice.

## IV

Mr. Metayer's conviction is affirmed.

**AFFIRMED**.